Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Thank you all. We're ready for our, you can be seated. We're now prepared for the second case of the day, Tarashuk v. Givens, and we have Mr. Lindemann. Thank you, Your Honor. Good to have you with us, sir. Good to be back here, Your Honor, in person. May it please the court, my name is Andrew Lindemann. And I represent the appellants, Jamie Givens and Allison Harmon, who are two paramedics. Well, one's a paramedic, one's an EMT in South Carolina. Your Honors, this is undeniably a tragic case from a factual standpoint. There's no denying that. But what this appeal presents to this court are purely legal issues. What we have appealed is purely a second-pronged qualified immunity issue, which raises strictly legal issues for this court to determine precisely whether or not the legal duties that the plaintiff is claiming that these two paramedics had were clearly established by the United States Supreme Court law, Fourth Circuit law, or a broad consensus of other authorities in September 2018. We submit that it did not, and that the district judge erred in her analysis of the second prong of the qualified immunity analysis. This appeal has basically two legal questions. Number one, and this is based on both the way the district court interpreted the plaintiff's pleadings, as well as the plaintiff's specific allegations against the appellees, Givens, and Harmon. This appeal asks whether or not the law in this circuit was clearly established in September 2018, such that a paramedic would have known, an objectively reasonable paramedic would have known, had been placed on fair notice of a constitutional duty to transport a mental patient to the hospital. And second of all, based upon the allegations that have been made by the plaintiff, whether or not it was clearly established in September 2018, whether an objectively reasonable paramedic would have known that there was a constitutional duty for the paramedic to intervene with law enforcement and prevent law enforcement from removing the subject from the scene. Those are the issues that were specifically- So are you saying that those are the constitutional rights on the first prong and that you don't contest those? Well, the first prong was contested. Judge Childs found that there were factual- Right, but you say in your briefs it's not an issue. It's not an issue in this appeal because this is an interlocutory appeal, and we can't challenge the sufficiency of the evidence under the Bairtons case, if I'm pronouncing that right, in the Johnson case from the U.S. Supreme Court. So this is- we're not conceding those issues because this is an interlocutory appeal under the Mitchell case. We cannot be challenging the first prong. So this appeal is limited to the second prong because that presents purely matters of law. And yes, to answer your question, those are the constitutional duties that have been pled on page 74 of the record, paragraphs 282 and 283 of the plaintiff's complaint. Well, what about paragraph 280 where they say that the defendants here were both deliberately indifferent to the decedent's obvious mental health needs in violation of agency policy by not taking their mental health evaluation? Well, that's essentially a restatement of paragraph 282, which, again, they're saying there was a duty to transport Mr. Tereshek to the hospital for a mental health event. That's reiterated in 280. Paragraph 280 can't restate paragraph 282 because 282 comes after 280. Well, I recognize that, but it's phrased in the same way. The allegation there is that there was a duty to take – this is from 280 – to take Mr. Tereshek to the hospital for a mental health event. And that duty is the same one that we found existed in the Cinto case, correct? The Cinto case? Yeah, I'm probably pronouncing that wrong. The Cinto case obviously didn't involve paramedics, didn't involve anybody. Does that matter? The right is about the pretrial detainee. This was a pretrial detainee, correct? Well, we dispute that. No, you don't. You concede that in your summary judgment papers and in the consent order that he was in the custody of the deputy and also that he was a pretrial detainee. One of the appellants does concede that for a first-prong analysis. This is a second-prong analysis. It's immaterial, I would submit, Judge Thacker. Which one do you say concedes that, Harmon? I believe it was Harmon who approached the issue based upon it being a pretrial. What about in the consent order signed by Givens where she conceded that he was, quote, in the custody of the deputy when she arrived on scene? Well, Your Honor, again, that is – the facts of the case all go to the first-prong. This is purely a legal question with the second-prong. So we're looking at the second-prong, I would submit, what an objectively reasonable paramedic would believe. It's not a subjective standard. But the legal issue is that a pretrial detainee is entitled to – for the paramedics on the scene not to be indifferent to his medical needs. It requires – yes, a pretrial detainee is – you must provide medical care to a pretrial detainee. For our purposes today, we assume that it's a fact as given by the district court that – the legal conclusion that the decedent was a pretrial detainee. Well, and again, that is, as Your Honor just said, it's a legal conclusion. In the footnote, in her opinion, Judge Childs relies on this case in Young v. City of Mount Rainier. Isn't that a fact you have to accept? You have to accept that you can't be contesting that for purposes of this appeal. Well, we're contesting it from a legal standpoint in determining whether the law was clearly established. Well, you're talking about the clearly established law, but the fact he was a pretrial detainee, that's not a legal question. I think it is, Your Honor. What the status of the individual is, I would submit, does present a question of law. Okay. This incident happened in 2018, correct? All right. And in 2016, the Fourth Circuit in Cento said the right of prisoners to receive adequate medical care and to be free from deliberate indifference to their known medical needs is a constitutional right at issue. That was two years before this – before the incident. So how was it not clearly established for these EMTs? Well, Cento, first of all, was a prisoner case. It was a convicted prisoner case. It was under the Eighth Amendment, number one. Number two, what the Supreme Court has said and said a number of times since Cento in the Casella case is one that we've cited, that they admonished the Circuit Courts that the law is being looked at with too great a generality. And there are two Supreme Court cases after Cento that say that, but there are also Supreme Court cases before Cento that say that. And Cento is still good law, correct? Cento is good law, but again, it does not deal with a situation such as what we have in this case, where you're dealing with paramedics who are out on the scene. There's no arrest. The person is never taken into custody. The person was in custody when they arrived on the scene. The person was in custody when they arrived on the scene. They took him out of a police car into the ambulance. He was in handcuffs. He was, but by the time I believe that the paramedics got there, he was no longer in handcuffs. But he was in the police car in the custody of the police officer or the deputy. Right, and he was not under any type of criminal investigation. He was never – But he was in custody. Yes, he was. That's what Judge Thacker asked you if he wasn't in custody. You said yes. That's correct, but again, what – If you're in custody, you're a detainee. You're in custody. You're in custody, you're in custody. That's correct, but what is important for this case is to look at what an objectively reasonable paramedic would have believed – And you're saying it's a 14th Amendment standard rather than an 8th Amendment standard. It is a 14th Amendment standard. And you're saying there's a material difference between the two? What I'm saying is you have to look at the specific facts. You have to evaluate the second prong of the qualified immunity. But you have to give them the facts. The other side gets the facts for purposes of your interlocutory appeal. And that's why – and again – You can't be coming up here with a factual dispute on an interlocutory appeal for qualified immunity. I totally agree with you. It's just a legal point, as you've said at the beginning. It's strictly law. It's a legal point. It's strictly law. And you characterize it in your statement of issue. You say the question is whether the decedent's 14th Amendment rights were not clearly established, such that paramedics in the appellant's position would have fair warning that their conduct toward the decedent was unconstitutional. That's the way you characterized it in your brief there, which is different from what you said here earlier this morning. I don't believe so. Well, maybe it's not materially different, but it's different terminology. What I am suggesting to this court is based on what the Supreme Court has cautioned me to sell in other cases. You have to look at the clearly established law with specificity. Clearly established is the right terminology. With specificity in this particular case, you have to look at whether there was a constitutional duty to transport Mr. Teresha to the hospital. What's important to recognize… Well, it seems like to me we're kind of going around in circles on pretrial detainee and whether or not Sento's the law. You have to accept that this individual was a pretrial detainee, or we have a very short argument today. And the same thing is you may well be right that the level of specificity is too broad, but Sento is the law. That's the law that applies to our case, and that's where we go from here. So it seems like to me the first prong of the analysis, which you say you don't contest, deals with the constitutional right, which is stated to be deliberate indifference to his mental health evaluation. And then they give examples in the complaint. So the manifestation of what happened to make deliberate indifference to me doesn't… That's not a separate constitutional principle. It's a matter of proving how the constitutional right was violated. Isn't that correct? Well, Your Honor, the first prong is whether or not there's been a constitutional deprivation, and Judge Childs found that there are issues in fact and dispute that preclude a decision on that on summary judgment. So we haven't conceded any issues on the first prong. What we're saying is when you look at the second… That's right. I mean, you can go to trial and argue about whatever you want to, but for purposes of summary judgment, you're not contesting what the constitutional right is. We are contesting whether or not the constitutional right that has been asserted and found to apply in this particular case… You have to admit there was… Well, it's clear… For purposes of your appeal, you need to admit that there was a constitutional violation, but say the right wasn't clearly established. That is correct. But you're trying to contest the constitutional violation. I am not. Well, you are in your arguments. You keep saying they allege a constitutional… They have alleged. They have alleged. Well, for purposes of your argument, they have a constitutional violation. And your argument is, should be, that the law wasn't clearly established. I'm basing the constitutional right on what the district court said, which was based on the pleadings. And she said, specifically, Tereshook alleges that his substantive due process rights under the 14th Amendment were violated specifically because defendants Harmon and Gibbons were deliberately indifferent to his serious medical needs by failing to transport him to a hospital and allowing Dorofsky to take him from the ambulance. So the constitutional rights that are being asserted here is a constitutional duty to be transported to the hospital and a constitutional duty to intervene with law enforcement to prevent the law enforcement officer from removing him from the scene. That's the constitutional rights with the level of specificity that the Supreme Court required. Those rights are not clearly established based upon United States Supreme Court law, this circuit's law, or a broad consensus of authority in September of 2018. That is our position. And there have been no cases cited that support any type of clearly established principles during September 2018 that would support a finding that that constitutional right, as articulated, was clearly established. And I see my time is up. I'll continue on rebuttal. Thank you. You've saved some time. Thank you, Mr. Linderman. Ms. Callaway. Good morning, RMA, police, the court. I'm Jordan Callaway, along with Russell Burke. We're here this morning on behalf of the appellee Paul Tereshok Sr. The way that the paramedics, Jamie Givens and Allison Harmon, interacted with Paul Tereshok Jr. on the night of his death is the height of deliberate indifference. Despite reports of his bizarre behavior, they failed to take any minimal steps to address his mental health status. Instead, they shoved an ammonia stick up his nose and cursed at him. Harmon even described contemporaneously her indifference. She's caught on video specifically saying she'd rather be at home asleep as opposed to dealing with his mental health crisis. Under the principles this court has established in Skinto and in other cases, ignoring, mocking and abandoning a seriously ill detainee violates his substantive due process rights. Opponents argued today that they lacked fair notion. How do you frame the question of what the clearly established constitutional right needed to be, needs to be? It would be at the level that was found in Skinto, which is the duty to receive adequate medical care and be free from deliberate indifference to their known medical needs. So that applies to prisoners and applies just as much to pretrial detainees. I could cite for the court several instances where this court has said that it applies both to detainees under the 14th Amendment to the same extent it does under the 8th Amendment to prisoners and also that it applies to the same extent to mental health issues as it does to physical health issues. And so that is Fourth Circuit law. It's also been established in this circuit for a long time. And that is the law of Skinto. And that's really the issue here today. This is an argument against precedent you're hearing from the opposing side. They're arguing that Skinto was wrongly decided. But I think they're also sort of suggesting that Skinto has somehow been impliedly overturned by Kilsa and Immons. But let me address that for a second. Neither Kilsa nor Immons said that Hope was wrong. And in Hope v. Pelzer, the U.S. Supreme Court said that you don't have to have a case that has the precise same facts. In fact, Hope rejected the standard that would require a case with materially similar facts. And Hope remains good law under Supreme Court precedent. And so Skinto has not been overruled by Immons or by Kilsa. I'll also note one other thing about those two cases in particular. Those are Fourth Amendment excessive force cases. And in both instances, the Supreme Court said that that phrase, excessive force, is of such that you do need maybe more specific facts there. But there's never been a Supreme Court or Fourth Circuit case which made a similar statement as it related to the deliberate indifference standard that applies to a detainee's serious medical needs. And so that is what makes those cases not necessarily different but shows that they don't in any way even suggest that they impliedly overrule Skinto. Let me also say this about Skinto. Skinto was not riding on a blank slate. When they defined that right at that certain level, they did so because Eco v. Shreve had already done so. And the Fourth Circuit had already done so in a previous case. What they said in Eco v. Shreve is that you don't have to define the right of a prisoner's right to be decontaminated from pepper spray after you've been sprayed four times, but instead you define the right as the right to receive a constitutionally adequate medical care and for them not to be deliberately indifferent to that serious medical need. And so Skinto was not riding on a blank slate. It's also consistent with other Fourth Circuit precedent that we've cited in our brief, the Booker v. South Carolina Department of Corrections case. As I understand your opposing counsel's argument, he says that he doesn't contest the general principle that a pretrial detainee, there cannot be deliberate indifference to the medical needs of a pretrial detainee. But as I understand the argument, he says when you look at what's clearly established, you look at the specific manifestation of what the deliberate indifference is. And here he says one of those examples is, quoting the complaint, the discontinuation of care and abandonment of the decedent without his providing further administration of care. And as I understand it, he's arguing that on that specific point, there isn't clear law at the time that the incident occurred. So what's your response to that, assuming I've characterized it correctly? Your Honor, a couple. First of all, that Skinto, I believe, even on the facts, has clearly established law on that particular issue. Because think about one of the incidents that was in play in Skinto. This individual prisoner was having a medical emergency. He had bloody vomit and an issue of incontinence. And the prison doctor comes by, sees this, can visually see it, and as it was alleged by the prisoner, that he then looked at the prisoner with disgust and walked away. That is, he ignored the need, he effectively walked the individual, and then he discontinued or abandoned him walking away. That is precisely what we allege here, that these, or not what we allege, what the court found the record supports. That in this instance, these paramedics basically ignored the fact they knew he had bizarre behavior. They knew that he had all these other issues, but yet they didn't do any sort of minimal mental health analysis on him. Then they mocked him. The de Rossi's video inside that ambulance is disturbing. Your Honor, to hear the things that they say to this man, and how they mock him during their encounter with them, and then they do discontinue their care and just sort of walk away. So one, on Skinto, I think the facts, Skinto is actually a very good factual analogy for the case we have here. And so I think also if you look to other Fourth Circuit precedents. Well, you've got two components as I understand the law at this point. One is an objective analysis. Was it evident that there was a health problem? There's a good argument when you look at the facts in the video that it would have been self-evident. Then it goes to the subjective factor. So what did the two defendants in this case know about it? Were they aware that this mental health condition was a factor and then acted regardless of that? So tell us what your best evidence is on the subjective factor. Okay. Yes, sir. I believe that it would be the fact that both of them admitted in their depositions and their statements, in other words, that his behavior as described to them by de Rossi was either bizarre or weird. Jumping on the tractor-trailer naked, running around, saying these crazy things, that was bizarre or weird. Then when you look to how the assessment they're supposed to do, they're supposed to determine if this person has altered mental status. Two of the factors of altered mental status include lethargy and bizarre behavior. And so by their own sort of standards, then they have to determine and consider him to have altered mental status, which is a serious health need both under their standing orders and under South Carolina law. We saw the South Carolina statute and regulation, both of which don't allow you to discontinue care when they're in a serious medical need like this. I would like to say one point about this, though. That subjective factor, I do believe, goes to the first prong of the qualified immunity analysis as to whether there was a constitutional violation. So under that 14th Amendment standard, you do have to show both the subjective and the objective standards in order to show that there is a constitutional violation. As I understand the appellant's position, they don't challenge that here. They're only challenging the clearly established element, that second prong. In fact, they were very effusive in their reply brief and sort of chastising me for even discussing that stuff in our brief, saying none of that's on the table. We're just dealing with clearly established here. And so I do think there's plenty of evidence in the record to support the district court's finding on the subjective element, but I also believe that that's not a portion of their appeal as they've described it in their briefs. Even if that wasn't given for our purposes today, if there's a factual dispute, that takes care of what we have to consider today, doesn't it? Absolutely, Your Honor. Any factual dispute has to go to a jury, even on the qualified immunity question. And again, with the limited scope of interlocutory appeal for the file of qualified immunity, they don't get to raise those here like any other. And so that's just not on the table here today either. We mentioned a few other Fourth Circuit cases that I think would help. If they're trying to challenge your facts in this appeal, does that undermine jurisdiction for the appeal? Yes, sir. As we say in our jurisdictional statement, there is Fourth Circuit precedent, the Williams v. Strickland case, which discussed this, and Johnson, the Supreme Court case, which discussed this, which says that the court can deny or dismiss the appeal, finding it lacks jurisdiction over those questions. Evidence-sufficiency questions are not available in interlocutory. So you have to get the benefit of the facts in order for them to get jurisdiction to argue the appeal? Yes, we get the benefit of the district court's finding on the facts. They are limited in their arguments here, jurisdictionally-wise. Do you get the benefit of the district court's facts, or do you also get the benefit of the facts revealed in the record, viewed in the light most favorable to the plaintiff? Yes, sir. Is that in addition to what the district court found, or is that something different than what the district court determined? I'm just trying to get you to tell me what your position is. Yes, sir. The factual findings by the district court are consistent with the record. We would also get the presumption in our favor as everything that's in the record. Was the court making findings, or was the court reciting the facts from the record in the light most favorable to the plaintiff? I don't know if I perceive a big difference between the two. Usually findings, I see the findings the judges make after they've had a hearing or something and heard witnesses like on the suppression motion or something. You don't have anything like that here. Yes, your honor. I think it's fair to describe that the court found the facts or considered the facts in the light most favorable to us. Recited the facts. Recited the facts in the record in the light most favorable to us. And viewed them in the light most favorable to you and made the ruling, and there contested the ruling. And to do that, they have to accept the recitation of the facts. Exactly, your honor. And that includes the fact that he was a detainee, which they do. They do basically concede. I mean, that's right in Harmon's briefing that when she walked up with him, he was detained. Even if you look at the facts, we wanted to look at the facts in the light most favorable to us. When they walked up to him, he was in the back of the Rossi's car, which he describes as a transport cage. So he's in a cage when they find him. And then as they're walking into the ambulance, he begins to wander off. And then they, both the EMS and the police officer says, no, no, no. And so if custody means that you're not able to go off on your own, we certainly have plenty of evidence of that in this case. I do want to address some of their arguments on clearly established, one of which is that the court can't consider any policy violations in the termination of clearly established law. Now, I will concede this much. Clearly established law cannot be based solely on policy violations. But there's both U.S. Supreme Court precedent and Fourth Circuit precedent considering policy violations in determining clearly established law. I would point the courts to the Hope case and also this court's opinion in the Booker case. And in Booker, the court specifically said that policy violations can buttress finding a clearly established law in the precedent. And Hope said the same thing in considering policy violations to help a clearly established law instance. And there are plenty of policy violations here. In fact, I don't even think it's fair to necessarily call those policies. Those are standing orders. On page 180 to 185 of the Joint Appendix, each one of those has a signature of a doctor at the end of it. Those are standing orders that were allegedly ignored here by the EMTs. And that's important as it goes back to Skinto, because the other incident in Skinto was the denial of insulin, according to a doctor's standing order. So this inmate had insulin-dependent diabetes, and his blood sugar went up and down, and there was a sliding scale in the order as to how much insulin he was supposed to get based on his blood sugar reading. And the argument was is that he should have gotten a certain amount and he didn't get any because this doctor denied it to him, and that is, in an instance, ignoring a doctor's order. That is precisely what we have here. Those standing orders on pages 180 to 185 are doctor's orders, and they ignored those. They just simply didn't follow them. As it relates to the termination of altered mental status and what you do with a person who has altered mental status, then those standing orders are not just standing orders. They're also South Carolina law. We cited both a state statute and a regulation that supports those conclusions. And for our purposes today, we assume all that to be factually given, correct? Yes, yes. Their misconduct, yes, is taken as a given for the purposes of today's hearing. Yes. Y'all can argue about it all you want at trial, but for today's purposes it's set. Yes, sir. And that's supported by the record, and that was their obligation. Let me see if there's anything else here that we need to address. Your Honor, I mean, I took the court to not necessarily accept the argument that he was not a detainee, but I would be happy to go through all the case law that really does show that he was, in fact, a detainee, even if he was a non-typical detainee. They make a big deal out of the district court's footnote in the citation to Young. But if you look at Young in the citation to Note 5. What do you mean they make a big deal? Well, they point to the footnote in the district court's order which says that Paul was not a typical detainee, and they interpret that. What page is that on? Isn't this a threshold issue? I mean, if there's a genuine factual dispute about detainee status, how do we have jurisdiction? I mean, isn't that a threshold foundational question, what the right is? Yes, sir, it is. And, Judge, it came to your question, the footnote is on page 2890 of the record, second or third to the last page of the district court's order. What footnote number was it? Joint appendix, page 2890. 2890. You're giving me the JA thing. I'm looking at the opinion. All right. Page 16. 17. Footnote 13. All right. And that's Young. And if you look at Young footnote 5, it says even if that individual was a non-typical pretrial detainee, the same duty was owed to him. That is to say, as soon as he was taken into custody by state authorities, whether that was done for criminal investigatory purposes or for some other purpose, they still had a duty to provide him constitutionally adequate medical care that is not to be deliberately indifferent to serious medical need. Now, as I understand the reply brief, the position simply is, well, what makes Young different is that in Young it was the officer's conduct which created the need for medical treatment. And Young does not make that distinction. But I also note that Young cites Buffington. And in Buffington the court says basically the exact same thing, but in Buffington the reason the person was taken into custody, civil custody, is because he was suicidal. And so once they took him into custody, they had a duty to provide minimally adequate medical care for him, which in that instance was just to monitor him. But my point is in Buffington they certainly didn't create that obligation. They still had an obligation to provide constitutionally adequate medical care to him. And so this notion that Young is just limited to instances where the And so we've got plenty of cases to establish that. You know, I would also note there are, by defining these two rights, this notion that it's just about transporting to the hospital, just about intervening with Dorofsky, that is not the limitations on our claim. If you look at paragraph 280 of our complaint, we allege 10 different ways in which Harmon and Gibbons were deliberately indifferent to his medical needs. That includes elements of the assessment itself. Like, for example, they acknowledged that they falsified the record afterwards and said that he was alert times four. They not only didn't determine that, they didn't even ask the questions or all the questions you would need to determine that. They asked him his name, sure, and I think they perhaps asked what he was doing out there that night. But alert times four means that you're alert to person, place, event, and one more that I'm forgetting. But they didn't even ask all questions to even address all four of those things. And so when you're talking about a minimally adequate, constitutionally adequate analysis, they didn't even ask the questions. That doesn't, we haven't even talked this morning so far about the misuse of the ammonia stick, which they stick up his nose for several minutes, in violation of every way in which they were trained. They admit they misused that. And then they said that he would have to give their name, his name before they didn't remove it from his nose. That too constitutes literary indifference. Remember under the 14th amendment, no pretrial detainee can face any form of punishment. That could very easily be determined to be a punitive action, the way they were using that ammonia stick. And again, we haven't even got to the DHEC orders where they admit to all of these things. They admit that they didn't do the proper. They got to the what orders? I didn't understand. The excuse me, the DHEC consent orders. Oh, the agency. Yes, sir. Yeah. Okay. Where they each acknowledge that they're subject to discipline. They ended up being either spent and being suspended for these things. They admit that their assessment was improper. And they admit that they didn't misuse the ammonia stick. They admit that they misrepresented these things in the records. They admit that they abandoned their patients. We have four circuit case law, which says that if you ignore mock and abandon your patients, that qualifies as deliberate indifference to a substantial benefit. You say they falsified the records too? Yes, sir. What's the impact of the falsification of records in a 1983 case? Your Honor, I think it does help support the notion that they were deliberately indifferent. I know it's after this case, but the fifth circuit considered a case just last year, the Kelson case, where they noticed these very same things. They falsified the records and found that that, at least at the complaint stage, supported the notion that they were deliberately indifferent. If they're going to cover it up afterwards, it was suggested that they were acting deliberately when they performed the conduct in and of itself. So it goes to proof of the deliberate indifference. Yes, sir. I see my time is about up. If there is no additional questions. Well, you don't have to take it off if you don't want to. Your Honor, we would ask the court to. But you're entitled to it. Thank you. Thank you very much, sir. We appreciate it. Mr. Lindeman. May it please the court. Your Honor, Mr. Callaway points to paragraph 280 of the complaint, suggesting that there were additional constitutional duties or issues at play in this particular case. I would remind the court that this was a substantive due process claim. If you look at some of those particulars, they talk about discriminating against them. That's not a substantive due process claim. Mocking the subject. Again, mocking has never given rise to a constitute. Well, that go to that go to prove the deliberate indifference, just like false find records. It would go. It would absolutely go to a first prong issue. Again, we are bringing a second prong appeal here because, again, that is all that we can appeal because that is a legal issue. And what we focused on is what the district court found. And the district court found this is on page 16 of her order. That the plaintiffs alleged that Harmon and Gibbons were deliberately indifferent to a serious medical needs. She says, quote, by failing to transport him to a hospital and allowing the Roski, the deputy to take him from the ambulance. Those are the issues that she ruled upon at summary judgment. And those are the issues. Well, the sentence is actually that that's what he alleges. The two of this red. That's right. And that's what I heard. I thought I heard you say that the court found that. No, that's what she is focused on. No, she, she says, that's what he's saying. She didn't say that's what I'm saying. I'm talking about the, she, there's just child. And her clearly established law may well be right, but that's what. But it's not her. It's not her. That saying that's what the issue is. It's their claim that that's what the issue. And that's what she's, she addressed that summary judgment. And so the point being, we're not arguing that skintone should be overturned. Skin toes. Why are you saying it wasn't clearly established that the constitutional right was not clearly established. Clearly established because you have to look at the right with specificity that spring court requires. You have to look at whether there's a constitutional right to transport him to the hospital. You're saying there's never been a case like this. There's never been. It might not be a, never be in there. It might ever be another one. As weird as this. There's no law in South Carolina that authorizes. I hope there's a never another like this. You were, you're saying that it was not clearly established to Harmon and givens that what they did was wrong. That's right. Then why did they falsify the records? From a constitute. They must've known it was wrong. Why would they falsify the records? Well, again, that's an allegation that they falsified the records. I thought they conceded. They falsified the records. They in their, in the consent order, they admitted they falsified the records. And you admit that for purposes of this appeal. For purposes of a prong one argument. Yes, but those issues also go to state law claims. There's state law claims involved in this case. I mean, that's a, that's a standard of care issue. That's a medical malpractice issue. Those are all state claims. The focus of this case is whether or not there's a constitutional right that has been violated. Number one. And number two, if there is a constitutional right, whether it was clearly established. And the right that they're claiming is a right to have been transported. There is no law that supports that. Neither South Carolina statutory law supports that. Mr. Callaway keeps arguing that there is, but at Yonner's 44 dash 17 dash four, 10. They're saying that there was deliberate indifference. And that part that you read. To his serious medical needs. By failing to transport. That there was deliberate indifference. There's no legal right to transport him in September, 2018. There cannot be a constitutional deprivation based on a failure to transport. There's no law that allows for that supports it. The case law that we submitted, including the, the cases out of the seventh circuit, the pain versus case. And then the salad with our case. Support our position. And as I was just indicating to the court, South Carolina has a very specific statute that satisfies procedural due process about how you can emergency. Admit a mental patient. And it does not provide for a paramedic to have that authority. It only allows for a court. To have that authority after certain procedural aspects are taken care of. So what they're arguing that we didn't do, we couldn't have done legally. So therefore it can't support a constitutional claim of deliberate indifference. Is your argument under South Carolina law? If the two defendants in this case had looked at this individual there in the ambulance and said, you know, this is, there's obviously a mental episode here, or he wouldn't have been riding the tractor trailer naked down the interstate in the middle of the night. We're going to take him to somebody who knows more about mental health than we are in order to try to assess the situation. Are you saying if they just drove the ambulance with him in it to a hospital, that he had a legal cause of action against them for abduction or false imprisonment? Yes, Your Honor. Quite frankly, if the officers had arrested him, that'd be a different story. Don't they're placed under arrest. The paramedics have no right to arrest. Don't their own protocols say that paramedics are required to transport someone with an altered mental state to the hospital under implied consent? That is an Orangeburg protocol. Right. That's what I said. Yeah. It's not law. Right. But their own product. So they don't have to follow their own protocols. Constitution. That does not give rise to a constitutional duty. Do they have to follow their own protocols? I would submit that it's contrary to state law. So they don't have to follow their own protocols. That I certainly would take on that particular issue. But that is a state law issue that goes to the state law claims for which Judge Childs deferred any type of rule. So when we focus purely on the constitution, the United States Supreme Court, as well as this court and law versus South Carolina Department of Corrections have made it clear that a violation of policy, this isn't even a policy. This is a protocol. Protocol and policy sound to me like the same thing. Well, I mean, bottom line is that does not give rise. Well, they argue, he argued in his law, that policy violations are relevant on the clearly established issue. Well, they're not. And you say they're not. Look at law versus South Carolina Department of Corrections. Look at the Caressi case from the United States Supreme Court. They've spelled that out pretty clearly. And then on this whole idea of intervening, having a duty to intervene and stop law enforcement from allowing the, taking this guy away and releasing him. Paramedics don't have that constitutional. Harman might as well stay to sleep then under your theory. She wanted to go back to sleep. Was she the one that wanted to go back to sleep? She might as well stay to sleep, not even come out and bothered with this gentleman because she didn't have to follow any protocols. I am not suggesting that, and that's for another day, whether or not the plaintiffs have a remedy under state law. The question before this court is whether or not it was a constitutional duty under substantive due process, either transport or intervene with the police officer. And our position is that law was not clearly established. We're not suggesting standing here saying that the plaintiffs will or will not prevail on a state law claim. State law courts are obviously available to address these type of issues. Thank you. Thank you, Mr. Lindeman. And we appreciate the arguments of counsel and the case will be taken under advisement and determined. We would normally at this time rise from the bench and go into the well of the court and read counsel. And thank you personally. We will, we're not doing that these days. We hope to be doing that the next time you come. We thank you very much. It's good to have you here. Thank you for your work.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker